STEPHEN I. LESHNER, (SBN 004754)
STEPHEN I. LESHNER, P.C.
8700 E. Vista Bonita Dr., Suite 204
Scottsdale, AZ 85255
Direct Line: 602.266.9124
Tel: 602.266.9000
Fax: 602.932.9107
Email: steve@steveleshner.com

JONES WARD PLC
Alexander C. Davis (*pro hac vice pending*)
1205 East Washington Street, Suite 111
Louisville, KY  40206
Tel: (502) 882-6000
Fax: (502) 587-2007
Email: alex@jonesward.com

*Attorneys for Plaintiff*
*Donna Jean Zudell*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donna Jean Zudell,<br><br>                Plaintiff,<br><br>    vs.<br><br>OMNIlife Science, Inc.<br><br>and<br><br>Corin Group.<br><br>              Defendant. | Case No.: 2:22-cv-00XXX<br><br><br>**<u>COMPLAINT</u>** |

Plaintiff, Donna Jean Zudell, by and through the undersigned attorneys, for her complaint against Defendants OMNIlife Science, Inc. and Corin Group, alleges as follows:

1.     This is a product liability case involving a defective hip implant system.  Plaintiff Donna Jean Zudell ("Plaintiff") had an Omni Apex K2 femoral stem, an Omni modular neck and an Omni Biolox Delta femoral head, ("Apex K2 Hip System") all manufactured by Defendant Omni, and implanted in her right hip joint on or about Oct. 01, 2012. The Apex K2 Hip System suffers from defects that create a metallurgical reaction at the modular junction of the stem and femoral head, leading to excessive amounts of cobalt and chromium, corrosion and trunnionosis, which in turn causes the hip implant to fail and the surrounding tissue and bone to die.

2.     As a result of these and other defects, which are described in greater detail below, Plaintiff's Apex K2 Hip System had an unreasonably high risk of failing in her body, causing excessive levels of metal debris, tissue and bone destruction, and the need for Plaintiff to undergo a complicated and risky surgery to remove and replace the defective implant. Plaintiff underwent this revision surgery on or about August 25, 2021, at the Yavapai Regional Medical Center in Prescott Valley, Arizona. She had a second revision surgery on April 21, 2022, and she continues to suffer complications from both procedures along with numerous dislocations.

## PARTIES

3.     Plaintiff Donna Jean Zudell is a citizen and resident of Kirkland, Arizona, which is located in Yavapai County, Arizona, and is part of the District of Arizona, U.S. District Court.

4.     Defendant OMNI Life Science, Inc. ("Omni") is a corporation existing under the laws of Massachusetts, and maintains its corporate headquarters and principal place of business in Raynham, Massachusetts. It is the successor in interest to Apex Surgical, LLC, which manufactured, distributed and promoted the Apex K2 Hip System, and also was located in Massachusetts.

5.      Defendant Corin Group ("Corin") is a corporation existing under the laws of England, and maintains its corporate headquarters and principal place of business in Cirencester, England. Corin is the parent company of Corin USA Limited, based in Tampa, Florida. Corin Group acquired Omni in 2019. On information and belief, Corin Group has assumed the legal liabilities of Omni in the wake of the merger and acquisition.

**VENUE AND JURISDICTION**

6.      This is a civil action of which U.S. District Court for the District of Arizona has original jurisdiction under 28 U.S.C. section 1332 because it is between citizens of different states (as described above) and the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interest. Plaintiff's two revision surgeries alone exceed this sum, and her damages for pain and suffering are far in excess of this amount.

7.      Venue is proper in the District of Arizona, U.S. District Court pursuant to 28 U.S.C. §1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and Defendant is subject to personal jurisdiction in that District because it does substantial business in Yavapai County, Arizona, through the same and promotion of medical devices by its acquired subsidiary Apex Surgical, LLC ("Apex Surgical").

**FACTUAL BACKGROUND**

8.      The hip joint is where the femur connects to the pelvis.  The joint is made up of the femoral head (a ball-like structure at the top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis.)  In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.

3

9.      A total hip replacement exchanges the body's natural joint with an artificial one, usually made of metal, plastic, or ceramic components.  A typical total hip replacement system consists of four separate components: (1) a femoral stem, (2) a femoral head, (3) a plastic (polyethylene) liner, and (4) a cup-shaped acetabular shell. After the surgeon hollows out a patient's femur bone, the femoral stem is implanted.  The femoral head is a metal ball that is fixed on top of the femoral stem, sometimes by means of a neck junction.  The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

10.      Hip replacement is one of the most common elective surgeries in the United States, with more than 400,000 Americans undergoing an initial, or primary, hip arthroplasty each year. The surgeries cost as much as $100,000 per patient.

11.      Nearly all of the devices marketed in the U.S. are made by five companies, which together form of manufacturing cartel that controls the vast majority of the market. Omni, via Apex, is not part of the cartel and controls a much smaller market share.

12.      Hip replacement systems are regulated by the U.S. Food and Drug Administration and are typically approved for sale through one of two pathways: PreMarket Approval, which requires clinical studies and heightened scrutiny, or the easier 510(k) process, which does not require testing in humans and does not carry any safety review.

13.      Apex Surgical was founded in 1999 and acquired by Omni in 2004. Apex Surgical is no longer a corporate entity, and ceases to exist beyond its successors in interest Omni, Corin USA Limited and Corin Group.

14.      Apex received 510(k) approval to market the Apex K2 hip stem on Dec. 21, 2004, as a Class II medical device. The FDA's approval letter states that the Apex K2 hip stem is made

of titanium alloy and the modular neck is made of cobalt and chromium alloy. The stem and neck are compatible with both metal and ceramic femoral heads.

15.     The FDA's approval letter also says that the Apex K2 is based on a predicate device, meaning the K2 has not been tested for safety and effectiveness, but rather is "substantially similar" to a previous device. In this case, the predicate was the Apex Modular Hip System, also distributed by Omni. Apex admitted to the FDA that it had not performed any clinical studies of the Apex K2 before it began marketing and selling the device.

16.     The design of the Apex K2 Hip System was not sufficiently tested by Omni and Apex Surgical, and it was never approved by the FDA as being safe or effective for the products' intended purpose. Its designers and manufacturers hoped that the stem's modular connection would make it more convenient for surgeons.

17.     Modular necks such as the one used in Plaintiff's surgery have been the subject of great concern in the medical device industry due to their risk of fretting and corrosion.

18.     Apex became aware as early as 2011 that the modular neck and stem used in the Apex K2 system were subject to corrosion and fretting, along with pseudotumors and other symptoms of premature failure. A search of the adverse event database maintained by FDA shows numerous reports of device failure between 2011 and 2014, and many of the reports were submitted months or even years after the initial revision surgery. Omni also failed to adequately investigate the reports, which prevented Plaintiff and her surgeons from learning about these problems.

19.     The femoral neck used in the Apex K2 system has an unreasonable failure rate, and Omni has known of this failure rate but failed to adequately investigate the problem and failed to recall the defective devices, as described in greater detail below.

**PLAINTIFF'S INJURIES**

20.     On or about October 01, 2012, Plaintiff underwent Right hip replacement surgery by Dr. Brent Hansen at Arrowhead Hospital in Glendale, Arizona during which the following components were implanted in her right hip joint: Size 5 Apex K2 stem,  Apex Modular Femoral Neck size 37.5mm Medium, with a OmniLife Biolox Delta femoral CoCr Head. Dr. Hansen paired these components with a metal acetabular cup made by Smith & Nephew, and a polyethylene neutral liner made by Smith & Nephew, in what amounted to an off-label use of the components made by two different manufacturers. Plaintiff does not bring claims against Smith & Nephew, as those components appear to have functioned appropriately and as intended, and did not contribute to her premature hip system failure.

21.     By this time, reports of adverse events associated with the Apex K2 stem and head, including the modular neck and K2 stem, had been filed with the FDA and Omni knew that the product was subject to failure due to excessive corrosion and other factors.

22.     Notably, one month prior to Plaintiff's initial surgery, in September 2012, the Australian Orthopaedic Association's National Joint Replacement Registry (AOANJRR) published the results of a study of the Apex K2 hip implant that identified the device as having a higher than expected revision rate. As a result, the Therapeutic Goods Administration (TGA), the Australian equivalent of the FDA, cancelled its own approval of the Apex K2 hip implant and a nationwide recall was issued.[1]

23.     The 2012 Australian registry report indicated that the cumulative revision rate for the Apex K2 Modular Hip Replacement System was 5.5% at 1 year from the time of implantation

---

[1] Statement on Apex K2 Femoral Stem, available at https://www.tga.gov.au/apex-k2-femoral-stem-used-hip-replacements

and 9.3% at 3 years. The revision rate for the K2 also was more than five times higher than the revision rate for all other conventional total hip replacement products, per 100 observed component years.[2]

24.     Even earlier, well before Plaintiff's initial surgery in 2011, the registry showed that the K2 had a higher than anticipated revision rate with a hazard ratio of 2.49 compared to other hip devices.[3]

25.     The same problem with corrosion in the Apex K2 hip stem was further confirmed in a peer-reviewed article in the Journal of Arthroplasty, which described a prospective, randomized study of the Apex K2 stem showing fretting corrosion at the neck-stem coupling.[4]

26.     But Omni refused to disclose that information to Plaintiff, her physicians, or the public.  Instead, and on information and belief, Omni did not disclose any of the risks of fretting corrosion in the labeling for the K2 system. For example, in the 2018 version of the Instructions for Use (IFU) for the K2 stem, Omni did not mention corrosion or fretting at the neck-stem junction whatsoever.[5] It was only later, in 2020, that Omni finally disclosed a risk of adverse effects due to "fretting wear and/or corrosion at modular implant junctions."[6]

27.     After conservative measures to treat plaintiff's failing hip system did not produce the intended results, on or about August 25, 2021, Plaintiff underwent revision surgery on her right

---

[2] *Id.*; *see also* 2012 AOANJRR Report, available at https://aoanjrr.sahmri.com/annual-reports-2012 (describing the K2 as having a hazard ratio of 3.65.
[3] See 2011 AOANJRR Report, available at
https://aoanjrr.sahmri.com/documents/10180/44800/Annual+Report+2011
[4] Dr. Michael Kent, et. al., *Stem Migration and Fretting Corrosion of the Antirotation Pin in the K2 Apex Hip System*, Journal of Arthroplasty 31 3 (2016): 727-34, available at
https://www.arthroplastyjournal.org/article/S0883-5403%2815%2900899-2/fulltext
[5] The 2018 version of the IFU is available at
https://eifu.coringroup.com/Home/PastRevisions?doc=394&retProc=2&retDesc=5&retLang=

[6] *See id.* A copy of the IFU in effect at the time of Plaintiff's original surgery in 2012 is not available, and will only be available following the exchange of information in formal discovery.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

hip joint, again by Dr. Richard Bassett at Yavapai Regional Medical Center in Prescott Valley, Arizona. In his operative note, Dr. Bassett stated that he found metallosis on the stem once the proximal body was removed. Dr. Bassett also reported dissociation of the greater trochanter during removal of the stem, which required additional repairs including the placement of three cables.

28.     Due to the initial failure of the Apex K2 hip system and the complications of her revision surgery including recurrent dislocation and greater trochanter nonunion, Plaintiff underwent a second revision surgery on her right hip joint, on April 21, 2022, by Dr. Steven Werner at SCMC Sonora Crossing Medical Center, in Phoenix, Arizona.

## COUNT I
### (Strict Product Liability)

29.     Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

30.     Omni designed, manufactured, promoted, distributed, marketed, and sold the Apex K2 Hip System.

31.     At all times material hereto, the Apex K2 Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by Omni was expected to reach, and did reach, prescribing physicians and consumers, including Plaintiff and her physician, without substantial change in the condition in which it was sold.

32.     At all times material hereto, the Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by Omni was in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce. Such condition included, but is not limited to, one or more of the following particulars:

(a)     When placed in the stream of commerce, the K2 Hip System contained manufacturing defects, subjecting Plaintiff and others to risks, including the risk

8

that the modular neck-stem junction would corrode, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

(b)     When placed in the stream of commerce, the K2 Hip System contained unreasonably dangerous design defects and was not reasonably safe for the intended use, subjecting Plaintiff and others to risks, including the risk that the modular neck-stem junction would corrode, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

(c)     The Hip System was insufficiently tested; and

(d)     The Hip System was not accompanied by adequate instructions and/or warnings to fully inform Plaintiff and her physicians of the full nature or extent of the risks associated with its use, and Omni failed to adequately investigate reports of early failures of the modular neck and femoral stem.

33.     Omni knew or should have known of the dangers associated with the use of the K2 Hip System, as well as the defective nature of the Hip System.  Despite this knowledge, Omni continued to manufacture, sell, distribute, promote and supply the Hip System so as to maximize sales and profits at the expense of the public health and safety.  Omni's conduct was done in conscious disregard of the foreseeable harm caused by the K2 Hip System and in conscious disregard for the rights and safety of consumers such as Plaintiff.

34.     Plaintiff and her surgeon used the K2 Hip System as directed for its intended purpose.

35.     At all times herein mentioned, the Hip System was defective, and Omni knew that it was to be used by the user without inspection for defects therein.  Moreover, at the time of the use of the subject products, neither Plaintiff nor her physician knew or had reason to know of the existence of the aforementioned defects.  Neither Plaintiff nor her physicians could have discovered the defects in the Hip System through the exercise of reasonable care.

36.     Omni negligently misrepresented to the medical community, to implanting orthopedic surgeon Dr. Hansen, to Plaintiff, and to the public that the Apex K2 Hip System presented no risk or a low risk of unreasonable and dangerous adverse side effects due to corrosion at the neck-stem junction.  Specifically, Dr. Hansen did not disclose to Plaintiff that the modular Apex K2 device carried a risk of corrosion at the neck-stem junction just before Plaintiff's surgery in 2012, at Arrowhead Hospital, in Glendale, Arizona.

37.     Had the Plaintiff and her physician known about the risks of fretting and corrosion at the modular neck-stem junction, and the higher than expected rate of revision for the K2 system which Omni knew about at the time, then Dr. Hansen would have told Plaintiff about those risks, and Plaintiff would have chosen to have a different hip system implanted in her body.

38.     The Hip System had not been materially altered or modified prior to its implantation in Plaintiff.

39.     As a direct and proximate result of the failure of the defective Hip System, Plaintiff suffered the injuries and damages as described herein.

## COUNT II
### (Negligence)

40.     Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

41.     At all times herein mentioned, Omni had a duty to exercise reasonable care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the Hip System to ensure that it would be safely used in a manner and for a purpose for which it was made.

42.     Omni maliciously, recklessly and/or negligently failed to exercise ordinary care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the Apex K2 Hip System.

43.     Omni, maliciously, recklessly and/or negligently made misrepresentations — including misrepresentations by omission in the IFU for the K2 system — about the safety and effectiveness of the Hip System to Plaintiff and her orthopedic surgeon.  In reliance on these misrepresentations, Plaintiff's orthopedic surgeon decided to use the K2 system in Plaintiff's surgery.  If it was not for the misrepresentations by Omni, Plaintiff's orthopedic surgeon would not have used the Apex Hip System in Plaintiff's surgery.

44.     Omni maliciously, recklessly and/or negligently failed in their duty to exercise reasonable care in the provision of an adequate warning to Plaintiff and her physicians as to the risks of the Hip System.

45.     Omni maliciously, recklessly and/or negligently failed to exercise reasonable care in the post-marketing warnings as to the risks of the Hip System when they knew or should have known of said risks.

46.     Omni's conduct was done in conscious disregard of the foreseeable harm caused by the Hip System and in conscious disregard for the rights and safety of consumers such as Plaintiff.

11

47.     Omni also knew or should have known that the combination of products used in Plaintiff's primary surgery were not approved by the FDA to be used together, but Omni failed to warn plaintiff or her surgeon that this was the case.

48.     As a result of Omni's wrongful conduct, Plaintiff suffered injuries and damages as alleged herein.

## COUNT III
**(Breach of Implied Warranties)**

49.     Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

50.     Prior to the time that the Apex K2 Hip System was used by Plaintiff, Omni impliedly warranted to Plaintiff and her physicians that the Hip System was of merchantable quality and safe and fit for the use for which it was intended.

51.     Plaintiff's physicians were and are unskilled in the research, design and manufacture of the Hip System, and they reasonably relied entirely on the skill, judgment and implied warranty of Omni, via Apex Surgical, in using the Hip System.

52.     The Apex K2 Hip System was neither safe for its intended use nor of merchantable quality, as warranted by Omni, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

53.     Omni, via Apex Surgical, by selling, delivering and/or distributing the defective Hip System to Plaintiff, breached the implied warranty of merchantability and fitness and caused Plaintiff pain and emotional distress, incur medical expenses and incur a loss of earning capacity.

54.     As a result of the aforementioned breach of implied warranties by Omni, Plaintiff suffered injuries and damages as alleged herein.

12

1

**PRAYER FOR RELIEF**

2

THEREFORE, Plaintiff demands judgment for the following:

3

       1.     Past and future lost wages, medical, permanency and incidental expenses,

4
              according to proof;
       2.     Past and future general damages for pain and suffering, according to proof;

5
       3.     Punitive and exemplary damages in an amount to be determined at trial;
       4.     Prejudgment and post judgment interest;

6
       5.     Costs to bring this action; and

7
       6.     Such other and further relief as the court may deem just and proper.

8

Dated:  September 8, 2022             Respectfully submitted,

9

10
*s/ Stephen I. Leshner*
Stephen I. Leshner

11
STEPHEN I. LESHNER, P.C.
8700 E. Vista Bonita Dr., Suite 204

12
Scottsdale, AZ 85250
Direct Line: 602.266.9124

13
Tel: 602.266.9000

14
Fax: 602.932.9107
Email: steve@steveleshner.com

15

16
Alex C. Davis, pro hac vice pending
JONES WARD PLC

17
The Pointe

18
1205 E. Washington St., Suite 111
Louisville, KY 40206

19
Phone: (502) 882-6000

20
Fax: (502) 587-2007
alex@jonesward.com

21
*Counsel for Plaintiff*

22

23

24

25

26

27

28

13